SAMUEL AYRES v. PENNSYLVANIA RAILROAD COMPANY.

1. A dedication of land for public use as a highway may be made subject to a right to designate a portion thereof for use for railroad purposes, and when such portion has been designated and devoted to railroad purposes, the public use will be suspended and remain suspended so long as that portion is devoted to such purposes.
2. A conveyance of land along such a highway, prior to the designation of a portion for railroad purposes, will pass the grantor's title to the centre of the street, subject to the public easement and the reserved right to devote to use for railroad purposes.
3. When he who has made such a dedication has conveyed a central strip of thirty-three feet to a railroad company for railroad purposes, a conveyance, afterward made, of land along such a highway will pass all the title the grantor has under the street to its centre; the circumstance that the grantor does not own all the land to the centre will not restrict the conveyance to the line of the street.

On rule to show cause.

Argued at November Term, 1884, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and MAGIE.

For the rule, *B. A. Vail.*

MAGIE, J. This was an action of ejectment, tried without a jury, and the following facts appeared:

The land in dispute is within the lines of a public street in Rahway, called Railroad avenue or Broad street, and in front of lots of plaintiff.

Upon the land defendant laid a railroad track or tracks, in 1876, and it is the possession thus taken which plaintiff contested.

Plaintiff's lots, with the contiguous lands, including the street in question, were originally owned by one Brown in one tract. In 1835, Brown laid out the tract in lots, and made and filed a map showing the lots and streets. Upon this map was delineated a street of one hundred feet in width, designated as Railroad avenue. In its centre were parallel lines indicating railroad tracks, and at one place the words "R. R. Depot."

Prior to the filing of this map, the New Jersey Railroad and Transportation Company had constructed their railroad to a point near the easterly line of Brown's tract, and when the deed next referred to was made, had entered on Railroad avenue in the prosecution of their work of extending the railroad westerly.

By his deed dated August 5th, 1836, Brown conveyed to one Mott lot No. 91 on said map, and described it as lying on the easterly side of Railroad avenue. Plaintiff owns the title conveyed to Mott.

By his deed dated May 30th, 1837, Brown conveyed to the New Jersey Railroad and Transportation Company a strip of land through Railroad avenue and sixteen and one-half feet in width on each side of its centre line. Defendant has the rights of the grantee in this deed.

By his deed dated June 12th, 1850, Brown conveyed to Ezra Ayres lots Nos. 93 and 95 on said map, and the description of the lots began in the line of Railroad avenue, at the corner of lot 91. Plaintiff owns the title conveyed to Ezra Ayres.

Lots 91, 93 and 95 adjoin each other. The land occupied by defendant, and the possession of which is claimed by plaintiff, lies outside of the centre strip of thirty-three feet conveyed

to the railroad company and between that strip and lots 91, 93 and 95.

Upon these facts there was a finding for defendant, and a rule to show cause was allowed. It is now insisted that this rule should be made absolute on the ground that the conclusion arrived at depended on an erroneous deduction from the established facts.

From the opinion filed with the finding, it appears that the judge who tried the cause found that the deeds under which plaintiff claimed contained no words of exclusion which would prevent the land under the street from passing thereby. In such a case, under the doctrine established in *Salter* v. *Jonas,* 10 *Vroom* 469, the legal presumption, under ordinary conditions, is that title to the centre of the street did pass by the deeds. But the conclusion was that such a presumption did not arise in this case.

As to lots 93 and 95, this conclusion was put on the ground that when Brown conveyed them he did not own to the centre of the street, for he had previously conveyed to the railroad company a portion thereof. For this reason it was held that the presumption did not arise even with respect to so much as Brown continued to own.

As to lot 91, it was held that the facts that the map showed a strip intended for railroad purposes, and that the railroad was being constructed, repelled the presumption that the title conveyed by the deed of that lot extended beyond the edge of the street.

The finding was placed on these grounds.

But it was further stated that if plaintiff's title should be presumed to extend to the centre line of that portion of the street lying between his lots and the thirty-three foot strip of the railroad company, (treating that portion as the highway so far as these lots are concerned,) the result would not be changed, for it was found that the defendant had not encroached beyond that centre line.

In dealing with the questions presented by this rule, it is of the first importance to determine what was the nature and

extent of the public highway along lots 91, 93 and 95 when Brown conveyed them away. For since the deeds do not exclude the street *in ipsis verbis*, the presumption is that the title passed in each instance *ad viæ medium filum*, unless the circumstances of each case are so unusual and peculiar as to forbid the presumption.

So far as the case shows, no highway had existed prior to the filing of Brown's map and the delivery and acceptance of his deed to Mott for lot 91. But it is well settled that those acts would create a public highway by dedication. The case with reference to this deed is precisely within the language of the opinion in Salter *v.* Jonas, where the learned Chief Justice declares that when a vendor, " by the effect of his conveyance, imposes on himself the obligation to devote the street to the public use, the rule, (*i. e.*, the rule that by legal presumption the title to the street will pass,) becomes the criterion by which the sense of the deed is to be ascertained."

But for the circumstance that the map showed parallel lines along the middle of the street in front of lot 91, and the words " R. R. Depot " at another place, there could be no question that the map and deed explicitly declared an intent to devote to public use as a highway the whole width of one hundred feet, and the dedication would have been complete to that extent. These indications that a part of the street might be used for railroad purposes must no doubt be considered as limiting the intent and therefore the dedication. But I can discover but two inferences of intent which may be drawn, one (which was suggested in the opinion) that the grantor designed to reserve a strip of land in the centre of the street for railroad purposes only, and to dedicate the remaining portions on each side as highways ; the other, that he designed to dedicate the whole street as a highway, reserving only a right to impose on a portion of it the burden of a railroad use.

In my judgment the latter is the reasonable inference to be drawn from the facts.

The intent to dedicate two highways separated by a reserved

strip is at variance with the map, which delineated but one street, with one name, and of one hundred feet width. Besides, at the date now in question, viz., when the deed for lot 91 was made, the location of the railroad upon this street, while possible and highly probable, was not irrevocably fixed. It was not fixed at all until May, 1837, when the deed to the railroad company was made, and it may be abandoned. It is inconceivable that the intent was that this central strip, if not used for railroad purposes, should be retained by Brown, or, if incapable of use by him, should be left waste and unprofitable.

Nor was it at all essential to the purpose of the parties, that the central strip should be excepted from the dedication. A dedication of a highway to the public may be made *cum onere*. *State* v. *Society, &c.,* 15 *Vroom* 502.

From all the circumstances, the plain intent was to dedicate to public use as a highway the whole width of one hundred feet, subject to an easement for railroad purposes over a portion of the centre, reserved to and to be designated by the grantor, Brown. When that portion should be designated and devoted to railroad purposes, the easement of the public highway would be suspended over it and continue suspended so long as it was devoted to such purposes.

With this view of the extent of the highway, the presumption that the deed for lot 91 conveyed title to the centre of the highway, must have effect, unless circumstances repel the presumption.

The circumstance relied on as requiring this deed to be construed as confining the title conveyed to the edge of the street, is the fact that a portion of the centre was plainly intended to be devoted to railroad uses. But the right or easement reserved for such uses can no more operate to repel the presumption than the public right or easement of a highway does. Under Salter *v.* Jonas, the presumption requires the deed to be construed as passing the title to the centre of the street subject to the public easement, and I can perceive no reason why a similar construction is not required when the

public easement is burdened by the possible devotion of a portion to railroad uses.

For this reason I think the deed for lot 91 passed the grantor's title to the middle of the street.

Next followed Brown's deed to the railroad company for the centre strip of thirty-three feet width. By that deed the portion of the street to be used for railroad purposes was designated, and to that extent the railroad use became paramount to the public use, and will exclude it so long as that portion of the street is so used. Moreover, that deed conveyed to the company so much of the strip of thirty-three feet as lies between the centre line of the street and lots 93 and 95, and the conveyance was in fee. But it must be remembered that there had been a previous dedication of this land to a public use, and the deed must be considered to have been made and accepted as subject to that dedication.

Then followed the deed for lots 93 and 95. By the ordinary presumption that deed passed Brown's title to the centre line of the street. The only circumstance which would tend to repel this presumption is the fact that the grantor did not then have title to the centre of the street, but only up to the strip of thirty-three feet width previously conveyed to the railroad company. From this circumstance alone it was held that the deed passed title only to the edge of the street.

But I conceive that this view has resulted from a misconception of the doctrines of Salter v. Jonas. I do not understand that the presumption which by that case is to be applied to the construction of deeds applies only to cases where the grantor owns all the land to the centre of the street. On the contrary, I think the reason of that case applies the presumption to every case where the grantor owns any land in the street in front of that conveyed, though not extending to the centre. The presumption was said in that case to arise from the purpose of the seller to convey all the interest he has in the property and "in its belongings." If a street were dedicated by the owners of two adjoining tracts, so that two-thirds of it should be on one tract, and one-third of it on the other

tract, I consider it impossible to doubt that. a deed for a lot fronting on the street would, under ordinary conditions, pass the title of the owner who had contributed to the street only one-third, up to the division line.

For this reason I think the deed for lots 93 and 95 passed Brown's title to all that he owned between those lots and the centre of the street.

The result is that by the true construction of these deeds plaintiff had title to the land in dispute, and the rule to show cause must be made absolute.

DIXON, J., concurred.

BEASLEY, CHIEF JUSTICE, dissented.