[Civ. No. 5633. Third Appellate District.—October 9, 1936.]

A. D. MARSHALL, Plaintiff, v. STANDARD OIL COM-
PANY OF CALIFORNIA (a Corporation) et al., De-
fendants; PACIFIC ELECTRIC RAILWAY COM-
PANY (a Corporation) et al., Cross-Complainants and
Respondents; CARR OIL CORPORATION (a Corpora-
tion) et al., Cross-Defendants and Appellants.

Head, Wellington & Jacobs and Ray H. Overacker for Appellants.

Frank Carr, C. W. Cornell and Lawler & Degnan for Respondents.

PLUMMER, J.—This cause is before us upon an appeal from the judgment of the trial court perpetually enjoining and restraining the City of Huntington Beach and its lessee, Carr Oil Corporation, from carrying on drilling and oil production operations on and within a portion of that public street or highway known as "Ocean Avenue". The action was begun by A. D. Marshall, a citizen and taxpayer of the City of Huntington Beach, to restrain such operations. Respondents Huntington Beach Company and Pacific Electric Railway Company each filed cross-complaints against the city and its lessee, Carr Oil Corporation.

While many authorities have been cited, and much industry has been shown by the collection of cases having to do with limitations in the habendum clauses of the deeds, the real question to be determined in this cause is whether the premises involved were accepted by the City of Huntington Beach upon trust for the purposes specified in the following instruments:

"THIS INDENTURE, made the twelfth day of January in the year of our Lord Nineteen Hundred and Sixteen between the Huntington Beach Company, a corporation organized under the laws of the State of California, and having its principal place of business in the City of Huntington Beach, County of Orange, and State of California, the party of the first part, and The City of Huntington Beach, Orange County, California, the party of the second part,

"WITNESSETH: That the said party of the first part, for and in consideration of the sum of Ten ($10.00) Dollars, gold coin of the United States of America, to it in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, does by these presents, grant, bargain and sell, convey and confirm unto the said party of the second part, and to its successors and assigns forever, all that certain lot, piece or parcel of land, situate, lying and being in the City of Huntington Beach, County of Orange, and State of California, and particularly described as follows, to-wit: A strip of land one hundred (100) feet in width lying northeasterly of and adjoining throughout its length the right of way of the Los Angeles Inter-Urban Railway Co., as described in the first part of that certain deed recorded at page 260 of Book 155 of Deeds, records of Orange County, California, and extending from the quarter section line running north and south through the center of Section 4, T. 6 S., R. 11 W., S. B. B. & M., to the northwesterly line of Twenty-third Street in the City of Huntington Beach, California.

"The side lines of the herein described strip of land are to be shortened or lengthened as the case may be so as to begin in the above described quarter section line, through the center of said Section 4, and to terminate in the northwesterly line of Twenty-third Street in the City of Huntington Beach, California. The herein described one hun-

dred (100) foot strip of land is more particularly shown colored on the accompanying map.

"The purpose of this deed is to deed the herein described strip of land to the City of Huntington Beach for street purposes, to be known as Ocean Avenue.

"Reserving and Providing, however, that the land herein conveyed is to be used exclusively for street purposes, said street to be known as Ocean Avenue, and the grantor reserves unto itself or its assigns the right to use said land for water, sewer, or gas pipes, telephone and electric lines and poles, railroads, conduits, or any other public utility.

"TOGETHER with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof.

"TO. HAVE AND TO HOLD, all and singular the said premises, together with the appurtenances unto the said party of the second part, and to its successors and assigns forever."

The purpose for which the foregoing instrument was executed and the reservations therein contained do not appear in the habendum clause of the deed, but are inserted in, and annexed to the granting provisions of the instrument. In this particular the deed under consideration differs materially from practically every case cited by the appellants.

Where the purpose for which the deed is executed appears in the habendum clause, the authorities universally hold that such declaration does not debase the fee, or whatever interest is conveyed in the granting clause. This principle, however, does not apply where the qualifying words appear in the granting clause of the deed. This distinction is made clearly to appear from the following excerpts which we quote from 9 California Jurisprudence, page 274: "An expression of the purposes of the conveyance as to the use of the property conveyed, 'as for the purpose of a public road', or 'for a county high-school ground and premises', or for certain religious and educational purposes, are generally held to be directory only, and not to qualify or limit a grant which is in absolute form. But this principle is not applicable where the qualifying words are in the granting

part of the deed, and so clearly connected with the word 'grant' as naturally to suggest that the intention was merely to convey the right to use the property for a certain purpose.''

The rule seems to be pretty well settled, also, that if several parts of a grant are irreconcilable, the former prevails. (Sec. 1070, Civ. Code.) In the instant case there does not appear anything in the habendum clause contrary or irreconcilable with any of the provisions contained in the granting part of the deed. The habendum clause simply confirms the right in the party of the second part to have and to hold whatever has been conveyed by the granting clause of the instrument. It neither purports to enlarge nor diminish any of the rights or privileges so granted.

There is also a distinction to be drawn between a covenant and a condition in order to ascertain the true intent and meaning of the instrument under consideration and what the respective parties had in mind at the time of its execution and receipt. A covenant in a deed may create a trust relationship and impose upon the grantee an obligation to use the premises for the purposes set forth in the conveyance. A condition does not impose a trust but is employed for the purpose of enabling the grantor to claim a reversion of the property upon breach of the condition.

Covenants will be more liberally construed than conditions. Conditions working a forfeiture are strictly construed. A covenant imposes a trust and raises an implied promise on the part of the grantee to use the premises for the purposes specified.

In *Greene* v. *O'Connor,* 18 R. I. 56 [25 Atl. 692, 19 L. R. A. 262], the Supreme Court of Rhode Island points out this distinction in the following language: ''This conveyance is made upon the condition that the said strip of land shall be forever kept open and used as a public highway, and for no other purpose;'' that when inserted between the description of the property and the habendum clause, it did not create a condition subsequent; that it was merely a declaration of the purpose for which the land conveyed was to be used and improved; and that such a declaration does not create an estate on condition, but merely imposes a confidence or trust in the land, or raises an implied

agreement on the part of the grantee to use the land for the purposes specified. A number of authorities are cited in the case from which we have just quoted, supporting the proposition just stated.

In the particulars which we have heretofore mentioned, the instant case is readily distinguishable from that of *Cooper* v. *Selig*, 48 Cal. App. 228 [191 Pac. 983], and the cases relied upon supporting the decision of the court in that case. Likewise, this is true of the case of *Eldridge* v. *See Yup Co.*, 17 Cal. 44, 49, one of the earlier cases decided by the Supreme Court, in which it was held that the purpose set out in the habendum clause did not limit the title conveyed in the granting portion of the deed.

The deed under consideration, in the granting part thereof, uses language which we think clearly imparts the intention of the parties at the time of its execution. We refer to the following language contained therein: "Reserving and provided, however, that the land herein conveyed is to be used exclusively for street purposes." Other reservations follow which retain a right and privilege that may subsequently be exercised on the part of the grantor, which we will consider later on in this opinion.

The word "exclusively" has a definite and certain meaning. After the execution of the deed it was received and accepted by the City of Huntington Beach, on the 28th day of February, 1916, as appears by the following resolution adopted by the city council of the City of Huntington Beach, to wit:

"The following deeds were received from the H. B. Co. . . . Dated 1/12/16. A strip 100 ft. wide paralleling the P. E. Ry. right of way on 23rd St., northwesterly to the city boundary *for street and highway purposes*. And it was moved by trustee Tarbox, seconded by trustee Helme and carried that deed be accepted and City Clerk be instructed to have same recorded."

This resolution shows the intent of the City of Huntington Beach in the reception of the deed and the acceptance of the trust therein imposed to use the property for an exclusive purpose.

Considerable space has been given by counsel in the discussion of what does and what does not amount to a dedi-

cation, and also as to the interest conveyed being a fee simple to the lands and premises described in the deed. We do not need to give any attention to whether the instrument involved did or did not amount to a dedication, nor does it seem to us material to dwell upon the question as to whether the City of Huntington Beach owns all the lands, minerals, etc., contained under the surface within the boundaries set forth in the deed. If the right to the premises or title to the premises was accepted upon trust, the right to have that trust enforced is vested in the grantor. After the execution of the instrument which we have set forth herein, to wit, on the 12th day of August, 1932, the City of Huntington Beach entered into a lease with the Carr Oil Corporation whereby it purported to lease a strip of land 30 feet wide and approximately 6,000 feet long, situate and lying along the ocean side of Ocean Avenue. There are exceptions in the strip reserved from the lease aggregating approximately 510 feet. The purpose of the lease was to enable the Carr Oil Corporation to erect oil derricks thereon, and to explore the strip of land conveyed for the purposes of developing oil and gases. The lease specified that the Carr Oil Corporation should erect at least ten oil derricks, sink at least ten wells in the development of the property, and also sink other wells as might appear convenient or profitable. The Huntington Beach Company owns all the land on the landward side of said Ocean Avenue, and also on the ocean-side save and except a 60-foot strip over which is the interurban track of the Pacific Electric Railway Company. ■ The ownership of the minerals lying beneath the surface of the street is not material if the premises were accepted upon trust. ■ We may here state that Ocean Avenue has been used by the City of Huntington Beach as a public highway, and devoted exclusively to the uses of the public as a highway for a great many years preceding the institution of this action. This of itself we think amounts to a dedication to the public of Ocean Avenue as a highway for the benefit of the public, and to be used and enjoyed by the public as a highway without unnecessary obstruction placed thereon, or unnecessary limitations of the use thereof. (*People* v. *County of Marin*, 103 Cal. 223 [37 Pac. 203, 26 L. R. A. 659].) A somewhat similar question was involved

in the case of *People* v. *Kerr*, 27 N. Y. 188, 189. There the court said: "The title conferred upon this public agent is wholly for public purposes. The City has neither the right nor the power to apply any such property to other than public uses and those included within the objects of the grant. . . . Whatever estate or interest it holds . . . is in trust for the public use." To the same effect is the case of *Theobold* v. *Louisville, N. O. & T. Ry. Co.*, 66 Miss. 279 [6 So. 230, 14 Am. St. Rep. 564, 4 L. R. A. 735]. It is there said: "If the fee is in the public, it is held in trust expressly or impliedly that the land shall be used as a street, and it cannot be applied to any other purpose without a breach of trust." We quote from the case of *Warren* v. *Mayor of Lyons City*, 22 Iowa, 351: "Nothing can be clearer than that if the grant is made for a specified, limited and defined purpose, the subject of the grant cannot be used for another, and the grantor retains still such an interest therein as entitles him, in a court of equity, to insist upon the execution of the trust as originally declared and accepted."

The same principle is set forth in the case of *Wattson* v. *Eldridge*, 207 Cal. 314 [278 Pac. 236], where the court says on page 320 of the opinion in that case as there reported: "Respondents rely upon the universally accepted rule of law that land which has been dedicated for a definite and specific purpose must be used in conformity with the terms of the dedication, and not diverted to any other purpose or use." (Citing a number of authorities.)

That the intention of the parties and the construction to be given to a deed is to be ascertained from a consideration of the whole instrument is supported by the case of *Boyer et al.* v. *Murphy*, 202 Cal. 23 [259 Pac. 38]. The cases which we have cited, and also which we shall hereafter cite, make a distinction between lands which have been conveyed to a city for a specific purpose, and lands the title to which has been acquired by a city through eminent domain proceedings.

The right to maintain an action to enjoin the use of premises for purposes other than those specified in the deed of conveyance is affirmed in the case of *Barker* v. *Hazel-Fain Oil Co.*, (Tex. Civ. App.) 219 S. W. 874. In this case an attempt was made by trustees of a church to

lease a portion of a cemetery to an oil company. The use of the premises for such purpose was enjoined.

To the same effect is the case of *Herald* v. *Board of Education*, 65 W. Va. 765 [65 S. E. 102, 31 L. R. A. (N. S.) 588].

In the case of *Spinks* v. *City of Los Angeles*, 220 Cal. 366 [31 Pac. (2d) 193], the distinction between the rule to be applied where land has been conveyed by a private donor and a dedication of land made by a city otherwise acquiring title, is pointed out. In the former, strict construction will apply, while a liberal construction will be applied where the city has otherwise acquired title.

 There is also another reason to be considered when construing the reservation contained in the granting portion of the deed, and that is the fact that the grantor owned the premises on both sides of the right of way conveyed, and therefore limited the purpose for which the premises could be used, in view of the fact that oil wells sunk on the narrow strip would drain oil from the adjoining premises owned by the grantor. This question was decided in favor of the grantor in the case of *Barker* v. *Hazel-Fain Oil Co., supra.* (See, also, *School District* v. *Barnes,* 110 Kan. 25 [202 Pac. 849].)

In *Slavich* v. *Hamilton,* 201 Cal. 299 [257 Pac. 60], the limitation in the deed there under consideration was contained in the granting portion of the instrument. We quote from the opinion as follows: "The description in the deed, a partial one, is followed by the declaration that conveyance is made only upon the express condition that said property shall be used forever for the purpose of a public water park, and said property shall be entirely dredged up to the line of the property of the parties of the first part on the southeast so that the same shall abut upon said water park." The purpose of the deed there considered was to convey a highway for the use of small boats and pleasure crafts. The court held, while giving effect to the different provisions contained in the instrument of conveyance, that the filling in of the dredged channel so that it could be used as a highway or as a street is commonly used for the conveyance of vehicles, was not a departure from the real intent of the instrument or a violation of the trust imposed upon, and accepted by the city upon receipt of the deed of conveyance.

 That the acceptance of a deed containing a covenant on the part of a grantee is equivalent to an agreement on the part of the grantee to perform the same is supported by the text in 15 C. J. 1211. (See, also, 3 Thompson on Real Property, page 77; *Pedro* v. *Humboldt County,* 217 Cal. 493 [19 Pac. (2d) 776].) It is not a question of damages; it is a question of whether the trust provisions shall be enforced, and if the covenant appears in the deed it will be given effect in equity. The grantor has a right to insist upon the observance of the trust provisions. (*Walker* v. *Haslett,* 44 Cal. App. 394 [186 Pac. 622]: see, also, *Edwards* v. *West Woodbridge Theatre Co.,* 55 Fed. (2d) 524 [60 App. Dec. 362].)

The Ontario cases cited by the appellants are not pertinent here by reason of the fact that they are based upon legislative acts dissimilar from any that prevail in this state.

 That the erection of oil derricks and the sinking of oil wells upon a public street constitute a public nuisance and a private nuisance to abutting property owners seems to us a question that admits of no argument, and one of which the court can take judicial knowledge. The fact that the obstruction constitutes a public nuisance does not prevent an owner of adjoining property from prosecuting an action. (*Fitzgerald* v. *Smith,* 94 Cal. App. 480 [271 Pac. 507]; *Lane* v. *San Diego Electric Ry. Co.,* 208 Cal. 29 [280 Pac. 109].)

In the case of *Brown* v. *Spilman,* 155 U. S. 665 [15 Sup. Ct. 245, 39 L. Ed. 304], the following language appears: "To operate the machinery used in boring an oil well it is necessary to erect a derrick which is a structure of considerable height and occupies a large space of ground. This derrick is also used if oil be found, in connection with the pumping machinery. A very strong odor proceeds from a gas or oil well, and the noise of a well in operation can be heard for a long distance. . . . These are matters within the common experience or knowledge of all men living in those portions of the country where oil and gas are produced, and courts will take notice of whatever ought to be generally known within the limits of their jurisdiction.

 Any monetary benefit which the City of Huntington Beach might receive by reason of the operation of the oil wells along the strip attempted to be leased to the Carr Oil

Corporation cannot be taken into consideration. (*City of Los Angeles* v. *Lewis*, 175 Cal. 777 [167. Pac. 390]; *Boone* v. *Kingsbury*, 206 Cal. 148 [273 Pac. 797]; *Western States G. & E. Co.* v. *Bayside Lumber Co.*, 182 Cal. 140 [187 Pac. 735].) The cases cited by the appellants relative to the public interests in oil and gas wells have no bearing upon the issues here presented for consideration. The language of the Supreme Court of Illinois in the case of *Smith et al.* v. *McDowell*, 148 Ill. 51 [35 N. E. 141, 22 L. R. A. 393], we think controlling here: "The permanent encroachment upon a public highway or street, unauthorized by the legislature, and the creation of a purpresture therein which obstructs the free and uninterrupted passage of the public is as a matter of law a public nuisance. The matter of inconvenience of the public, or that sufficient of the street may remain unobstructed and still accommodate the public travel cannot be considered."

In addition to what we have said, the deed to the City of Huntington Beach contains the following reservation, retaining rights in the grantor, to wit: "And the grantor reserves unto itself, or its assigns, the right to use said land for water, sewer or gas pipes, telephone and electric lights and poles, railroads, conduits, or any other public utility." This reserves the right to use any portion of the thirty-foot strip attempted to be leased to the Carr Oil Corporation for the purposes therein mentioned, and that right exists in, and belongs to the grantor, irrespective of whether it is or is not making a present use thereof.

Other cases might be cited showing that the erection and use of the thirty-foot strip alongside the ocean-side portion of the highway would constitute a nuisance which equity will enjoin, but what we have said in cases cited we think sufficient.

Respondent urges further that the lease is violative of section 14 of article I of the Constitution of the state of California, and also of section 10 of article I of the federal Constitution. In view of what we have said we think it unnecessary to consider constitutional objections.

We have not overlooked, but do not deem important, the question as to what the pleadings allege and what the pleadings admit, for the reason that the construction of the deed

which we have given seems decisive and necessitates an affirmance of the judgment. And it is so ordered.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 7, 1936.