**EMPLOYERS CAS. CO. v. ONYX REFINING CO.**

No. 2878.

Court of Civil Appeals of Texas. Eastland.

May 25, 1951.

Rehearing Denied June 15, 1951.

Marvin Sprain, Dallas, McMahon, Springer & Smart, Abilene, for appellant.

Grisham & King, Abilene, for appellee.

LONG, Justice.

Employers Casualty Company, hereinafter referred to as the insurance company, issued to Onyx Refining Company, hereinafter referred to as Onyx, a comprehensive general liability policy whereby the insurer agreed to pay on behalf of the insured all sums which the insured should become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof caused by accident. The policy of insurance was subsequently changed by endorsement as follows:

"Exclusion of Property Damage  G–159
    Liability Arising from Certain Explosion and Collapse Hazards
    Endorsement        No. 2

"It is agreed that the policy does not apply to injury to or destruction of property arising out of operations stated in the declarations as subject to this exclusion or out of operations not described therein which are subject to this exclusion in the company's manual and caused by (1) blasting or explosion, other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) the collapse of or structural injury to any building or structure due (a) to excavation, tunneling, pile driving,

coffer-dam work or caisson work or (b) to moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof, while such operations are being performed by named insured.

"This endorsement shall be subject to all of the terms, provisions and conditions of the policy, and nothing herein contained shall vary, alter or extend any term, provision or condition of the policy except as herein specifically stated.

"This endorsement, when signed by a duly Authorized Agent of the Company, shall form a part of

"Policy No. CGL–A2–524305 Issued by the Employers Casualty Company of Dallas, Texas

"To Onyx Refining Company

"and shall be effective from 12:01 A. M. Standard Time March 1, 1949.

"Signed at Abilene, Texas. Date, March 22, 1949.

"/s/ W. Lon Steffens, Authorized Agent

"W. Lon Steffens."

On or about December 14, 1949, an explosion occurred in the refinery which caused damages to property owned by third persons. A suit was filed against Onyx for damages growing out of such explosion. The insurance company declined to defend under its policy contending the risk had not covered the explosion. This suit was instituted by Onyx against the insurance company for a declaratory judgment, adjudication of the question of coverage and for judgment that the insurance company be held liable under the policy to defend and pay any judgments that might be obtained as result of any action brought against it by third persons for damages as result of the explosion in question. Trial was had before the court without a jury and judgment was rendered holding the explosion was covered by the policy and the insurance company was obligated to defend such law suits and pay any judgments obtained against Onyx resulting from the explosion. From this judgment the insurance company has appealed.

It is admitted that on or about December 14, 1949, a large cylindrically-shaped instrumentality, used by Onyx at the refinery, known as a "vapor separator" exploded and that such explosion caused damages to property owned by third persons. It will be noted that the endorsement on the insurance policy covered explosions of "piping under pressure." The question for determination is, whether the explosion took place in "piping under pressure." In other words, was the "vapor separator" a part of "piping under pressure." The trial court so found and that the policy covered the explosion.

The court filed findings of fact and conclusions of law as follows:

"Findings of Fact:

"I.

"I find that the Employers Casualty Company, defendant herein, issued to the plaintiff, Onyx Refining Company, a comprehensive general liability policy, No. CGL A2–524305, in which policy the defendant agreed to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to, or destruction of property including the loss or use thereof, caused by accident.

"II.

"I find that on or about the 14th day of December, 1949, that there was an accident at the Onyx Refinery caused by an explosion of a pressure vapor separator.

"III.

"I find that there has been a lawsuit filed against the Onyx Refining Company seeking damages to an automobile parked on the highway, alleging damage against Onyx Refining Company by reason of said accident and explosion.

"IV.

"I find that the Employers Casualty Company has denied liability under said Policy, and has refused to defend said lawsuit or any cause of action arising because of said incident.

"V.

"I find that said policy of insurance contained the following endorsement: (said endorsement hereinabove set out)

"VI.

"The court finds that the pressure vapor separator, in which the explosion occurred, was a cylindrical steel pipe of enlarged diameter, through which there was a continuous flow of fluids or gases, under constant pressure, and was in fact a part of the piping under pressure.

"VII.

"The court further finds that the pressure vapor separator was in fact an enlarged zone in the system of piping under pressure. This vessel had an inlet in the side where hot oil vapors and liquids entered, and an outlet at the top where the gases flowed on into other parts of the piping system, and an outlet at the bottom where the liquids flowed on into other parts of said system. That such vessel was a part of the continuous hydraulic piping system operating under pressure from the time the crude oil entered into the first phase of the refining process until the raw products came to rest in the storage tanks.

"The Court finds further that this vessel operated under continuous pressure, and that the volume of liquids and vapors entering the side inlet was at all times equivalent to the sum of the volume of vapors flowing out the top, plus the liquids flowing out the bottom, and that at no time did any such liquids and vapors come to rest within the confines of this vessel.

"VIII.

"The Court finds that under the terms of the policy and of the endorsement above set out, that the policy covered explosion of piping under pressure, and that the explosion in this case was an explosion of piping under pressure.

"IX.

"The Court finds that the explosion and resultant damage therefrom was covered by the comprehensive general liability policy above referred to, and finds that such accident or risk is expressly covered under the terms of said policy.

"Conclusions of Law:

"I.

"The Court concludes as a matter of law that the plaintiff is entitled to a declaratory judgment as prayed for in its petition, and adjudges that the defendant, Employers Casualty Company, is obligated to defend such lawsuits as may be brought against the Onyx Refining Company by reason of alleged property damages resulting from said explosion, and that the defendant is obligated to pay any judgments obtained against the Onyx Refining Company by virtue of any liability of the Onyx Refining Company to third parties by reason of said explosion and accident.

"Court's Additional Findings of Fact"

"In response to the request of the defendant in the above entitled and numbered cause, I have heretofore, on, to-wit: January 16, 1951, made and filed in said cause my findings of fact and conclusions of law.

"Upon the request of the said defendant for additional findings of fact filed in said cause on January 22, 1951, I hereby make and file additional and further findings of fact in said cause, to-wit:

"A.

"I find as a fact that the vapor separator in which the explosion occurred, and which the Court has found to be a part of the piping under pressure, is what is known in the nomenclature of refineries as an unfired pressure vessel.

"B.

"I further find as a fact that unfired pressure vessels, such as the vapor separator in which the explosion occurred, and which the Court has found to be a part of the piping under pressure, is dealt with in the refinery industry by a written code separate and distinct from that dealing with piping under pressure; and

180

"In this connection, I further find as a fact that two written codes, having to do with the design and construction of the instrumentalities used in a refinery, are recognized as authority by the refining industry, to-wit: (1) API*ASME Code for Unfired Pressure Vessels; and (2) ASME Code for Pressure Piping; and that API means American Petroleum Institute; and ASME means American Society of Mechanical Engineers; and

"I further find as a fact, in this connection, that the definitions and phraseology used in said codes are technical and limited, dealing with specific things for a limited field, for the purpose of technical engineering and use of the industry in designing, ordering, and constructing particular parts for a refinery."

Appellant contends the court erred in finding the explosion was an explosion of "piping under pressure" and covered by the policy of insurance. Appellant argues that "piping under pressure," when construed in the light of the customary and common nomenclature used by the refining industry, does not include the "vapor separator." We believe the evidence, when viewed in its most favorable light to appellee, supports the finding of the trial court. It is conclusively established that the explosion occurred in the "vapor separator." This vapor separator was a cylindrical steel pipe of enlarged diameter through which there was a continuous flow of fluids or gases under constant pressure. The evidence discloses that the oil was kept continuously moving in pipes of different sizes, shapes and turns throughout the refining process. The vapor separator had an inlet in the side, which inlet was welded to the vapor separator where hot oils entered and an outlet at the top where gases flowed into the other parts of the system and an outlet in the bottom where the liquids flowed on into the other parts of the system. As we understand the record, the vaport separator was in the nature of a pipe made larger than the other pipes for the purpose of giving the oil more space and thereby reducing the pressure and causing vaporizing to take place. The

question to be determined is, was this vapor separator a pipe or piping. Webster's New International Dictionary defines pipe thus: "Any long tube or hollow body of wood, metal, earthenware, or the like, as to conduct water, steam, etc.; A large cask of varying capacity, used especially for wine and oil;" and defines piping as follows: "Pipes collectively; material in, or suggestive of, the form of a pipe or pipes." One of the expert witnesses testifying for appellee stated that a pipe or pipes can be in almost any size and shape within the bounds of reason; that in the refining industry material is ordered as pipe, sizers and heads are put on it, and it is connected with inner connecting lines and given a name which is functional depending upon what it does; further, that a pipe or pipes could be a large tower in engineering practice. The experts gave as their opinion that the "vapor separator" in which the exposion occurred was definitely "piping under pressure." It is true there is evidence to the contrary.

Appellant contends that the "vapor separator" and "piping under pressure" is dealt with by two separate codes. Evidence was introduced showing this to be true, and the court so found.

It is further contended by appellant that it is conclusively established by this and other evidence that the "vapor separator" was not a part of "piping under pressure." We do not agree with this contention. One of the witnesses for appellee testified that the reference to the "vapor separator" by a different code was functional, that is to say, it was so designated because of the part it played in the refining system. From the record we cannot hold the evidence conclusive that the "vapor separator" was not "piping under pressure." This was a fact question for the determination of the court. The evidence is sufficient to sustain the finding of the court that the explosion occurred in "piping under pressure," therefore, it follows the court did not err in holding the explosion was covered by the policy of insurance and appellant liable thereunder.

The judgment is affirmed.