[Civ. No. 212.   Fifth Dist.   Aug. 5, 1963.]

WOFFORD HEIGHTS ASSOCIATES et al., Plaintiffs and Appellants, v. COUNTY OF KERN, Defendant and Respondent.

Di Giorgio & Davis and Thomas R. Davis for Plaintiffs and Appellants.

Vizzard, Baker, Sullivan & McFarland and Jere N. Sullivan for Defendant and Respondent.

CONLEY, P. J.—Plaintiffs sued the County of Kern for damages on a theory of inverse condemnation for the partial destruction, and in part for the cost of relocation, of water pipelines lying under Wofford Boulevard in Kern County. Originally, other defendants were also named as parties, but the cause was dismissed by consent as to all of them except the County of Kern. The record shows that Irven L. Wofford and Martha N. Wofford were originally the owners of an extensive tract of land in the foothill area of Kern County and that in April of 1951 the Woffords conveyed a strip of it to Kern County for public highway purposes, known as Wofford Boulevard, reserving, however, easements in each of the two deeds by which this transfer was accomplished. As the meaning of the reservations in the deeds is of primary importance to the decision of this appeal, we set out as follows:

"EXCEPTING AND RESERVING, HOWEVER, exclusively, to the grantors and the heirs, successors and assigns of the grantors, the right to construct, install or place in, under or upon said road any pipe, pipelines, pole, pole lines, wire, conduit or any other form of installation for transportation or transmission of power or of telephonic or telegraphic messages or communications, with right to enter said conveyed premises for such purposes and for maintenance, operation and repair of such installations, together with the sole and exclusive right to grant to others the privileges and rights herein reserved; PROVIDED, FURTHER, that the grantee shall be entitled to all damages to any public highway on said premises herein conveyed, occasioned by the exercise of the rights in this exception and reservation and shall be entitled to designate the exact location in any public highway on said premises of any installations made in the exercise of said rights, as, if and when made."

At that time Mr. Wofford and his wife owned a company, known as "The Arden Water Company," which supplied water to the residents of the area. This public utility company is now owned by Wofford Heights Associates, the plaintiffs herein. The water company's pipes were located underneath Wofford Boulevard, generally following the center line of the roadway. Plaintiffs have succeeded to all of the rights of the Woffords.

In 1948, prior to the delivery of the deeds above mentioned, tract number 1422 was placed of record. Later, in the year 1951, tract 1605 was also placed of record. Both tracts include part of the road area.

In 1961 and 1962, it became necessary to repair and widen the boulevard, but before doing so, the defendant notified the plaintiffs that the heavy equipment which would be used would undoubtedly crush and ruin the old water pipes underneath the highway. Plaintiffs commenced this action to require the defendant to pay for the damage caused to the pipes and the cost of moving or replacing them, if not destroyed. The foregoing facts were agreed to by the litigants. It was further stipulated by counsel that Kern County knew that the water lines were located under the roadway at the time the work of improvement was planned, that the county never demanded that the plaintiffs remove the lines, but merely gave oral warning that construction of the improvement as planned would cause serious damage to the pipes underneath the highway, that the plaintiffs had demanded compensation for the removal and relocation of portions of their lines and that the plaintiffs had no franchise from the County of Kern to maintain the lines under the roadway.

It was agreed by the parties at the time of the pretrial conference that the court should first try the issue whether there was any liability and that if such issue were decided adversely to the plaintiffs judgment would be entered without taking any evidence as to the extent or nature of the damages allegedly suffered. After trial of this first issue, the court found that there was no liability, and a judgment was accordingly entered in favor of the defendant from which the appeal was taken.

The appellants now concede that the judgment is sound insofar as it applies to the boulevard within tract 1422 and tract 1605 due to the fact that in filing the tract maps there was an outright and unqualified dedication by the Woffords of all streets shown thereon, including Wofford Boulevard. The appeal is therefore applicable only to those portions of Wofford Boulevard lying outside of the two tracts and enclosed within a red line on defendant's Exhibit A, consisting of approximately 2,800 linear feet of Wofford Boulevard.

Respondent justifies the decision of the trial court adverse to appellants on two grounds: first, that the above quoted reservation in the deeds did not include an easement for water pipes or water pipelines; and secondly, that section 2637 of the Kern County Ordinance Code, admittedly in effect prior to the delivery of the deeds, barred any recovery. It reads as follows:

"Any person, firm or corporation placing or maintaining any pole, pole line, pipe, pipeline, railroad track, or other structures or fixtures upon any County highway, whether under a franchise or otherwise, shall move the same at his own cost and expense to such different location in the highway as is specified in a written demand by the Road Commissioner having charge of the district in which the same is located whenever necessary to insure the safety of the traveling public, or to permit the improvement of the highway, provided that no such change of location shall be required for temporary purpose."

We believe that the trial court was in error on both points. ■ As we have seen through the quotation of the reservation contained in the deeds, the Woffords reserved ". . . the right to construct, install or place in, under or upon said road any pipe, pipelines, pole, pole lines, wire, conduit or any other form of installation for transportation or transmission of power or of telephonic or telegraphic messages or communications." Respondent maintains that the only easement reserved was restricted to installations for the transmission of power or telephonic or telegraphic messages or communications. On the other hand, the appellants point out that the connotation of the very words "pipe" and "pipelines" presupposes structures for the flow of liquids or gases and in their specific meaning the flow of water, inasmuch as water is the first requisite for the maintenance of homes; and, in this connection it is pointed out that at the time of the delivery of the deeds pipelines were already in place with respect to tract number 1422 and that the parties must have understood that the transmission of water was of the utmost importance, whereas the transmission of power or telephonic or telegraphic messages was something that might be needed only at some future date. Specifically, the appellants argue that what follows the word "conduit" modifies and refers to a conduit or other form of installation in the nature of a conduit for transportation or transmission of power and communications and that the words following "conduit" do not modify or relate to the much earlier words, "pipe and pipelines."

The appellants do receive considerable support from the definitions included in Webster's Third New International Dictionary. Among the definitions of "pipe" are the following: "2a: a long hollow cylinder (as of metal, clay, con-

crete, plastic) used for conducting a fluid, gas, or finely divided solid. . . .'' Pipeline is thus defined: ''1. A line of pipe connected to pumps, valves, and control devices for conveying liquids, gases, or finely divided solids.'' One of the definitions of ''conduit'' contained in the same work is: ''Pipe, tube, or tile for receiving and protecting electric wires or cables (as for telephones or power lines).''

In *Williams* v. *State,* 133 Tex.Cr.Rep. 201 [109 S.W.2d 489, 491] it is said: ''The term pipeline . . . is commonly understood as a means by which water, gas, oil, or other liquids are conveyed from one place to another.''

A pipe has been defined as ''A long tube or hollow body of wood, metal, earthenware, or the like, used to conduct water, steam, etc.'' (*Employers Cas. Co.* v. *Onyx Refining Co.* (Tex. Civ.App.) 241 S.W.2d 177, 180; *Vinson* v. *Fentress,* 33 Tenn. App. 359 [232 S.W.2d 272, 276]; 32A Words and Phrases (perm. ed.) p. 101.)

It will be noted that there is no comma after the word ''conduit'' in the reservation clause, and this lends support to the contention of appellants that the qualifying language following it refers to ''conduit'' only and does not control the earlier words ''pipe'' and ''pipeline.''

With respect to statutory construction, it is said in 45 California Jurisprudence 2d, Statutes, section 137, pages 644-645: ''Where there are uncertainties or ambiguities in the meaning of a statute, qualifying words, phrases, or clauses construed as referring to the words, phrases, and clauses immediately preceding, not to more remote words, phrases, or clauses. This means that, unless the context or the evident meaning requires a different construction, the effect of a limiting clause is confined to the last antecedent. However, where several words are followed by a phrase that is as applicable to the first and other words as to the last, the phrase will be read as applicable to all. Moreover, the last antecedent rule, which applies only in the construction of ambiguous sentences, has no application to an adverbial phrase that modifies a verb. The application of the rule is confined to nouns and noun phrases followed by relative words, phrases, or clauses.''

We hold, therefore, that the trial court was in error in its conclusion that the Woffords did not reserve an easement for the purpose of installing and maintaining water pipes.

■ Turning to the second point urged by appellants, we

have in mind that the defendant never owned the easement, but that it was originally part of the total property of the Woffords and being reserved by them, it continued to be their portion of the original property which they retained when they granted the right to the county to maintain Wofford Boulevard. The status of the reservation of an easement or similar right by one dedicating land to a county has clear recognition in California law; a dedication need not be unqualified, total and unconditional.

"The dedicator, in the offer to dedicate land to public use, may impose reasonable conditions, restrictions, or limitations on the public use. For example, where the owner of land deeds a strip thereof to a county for highway purposes, reserving all the trees growing thereon and the right to trim and remove them pursuant to express assurances of county officials that such a reservation will be respected, and the board of supervisors accepts the dedication subject to such reservation, a municipal corporation which subsequently succeeds to the control and supervision of such highway as a city street takes it burdened with the exception and may not, without the grantor's consent or without compensation, remove the trees because they interfere with the plans of the city to widen the street, or, under a purported exercise of the police power, because they are a nuisance. And where a deed of dedication is accepted by a city, which deed recites that the purpose is to deed the described land to the city for street purposes, reserving to the grantor certain rights for purposes of public utilities, equity will enjoin the city and its lessee from carrying on oil drilling or production operations which are in violation of the covenant, and constitute both a public and a private nuisance." (15 Cal.Jur.2d, Dedication, § 58, pp. 348-349.)

The cases of *Hill* v. *City of Oxnard,* 46 Cal.App. 624 [189 P. 825], and *Marshall* v. *Standard Oil Co.,* 17 Cal.App.2d 19 [61 P.2d 520], deal with the status of a right reserved to the grantor in circumstances which resemble those involved in this case. In the *Oxnard* case the right of a grantor to make a qualified dedication by reserving a real property interest and the binding effect of the reservation on a public body through the acceptance of the qualified grant are clearly illustrated; the holding was approved by the Supreme Court in *Pedro* v. *County of Humboldt,* 217 Cal. 493, 497 [19 P.2d 776]. And in the *Marshall* case the court upheld the binding

effect of the reserved property right of a grantor where the reservation resembled the one in the instant case. At page 30 the court said:

"In addition to what we have said, the deed to the City of Huntington Beach contains the following reservation, retaining rights in the grantor, to wit: 'And the grantor reserves unto itself, or its assigns, the right to use said land for water, sewer or gas pipes, telephone and electric lights and poles, railroads, conduits, or any other public utility.' This reserves the right to use any portion of the thirty-foot strip attempted to be leased to the Carr Oil Corporation for the purposes therein mentioned, and that right exists in, and belongs to the grantor, irrespective of whether it is or is not making a present use thereof."

When Kern County accepted the qualified conveyance the plaintiffs' predecessors retained the right to use the subsurface for pipes and pipelines, including, as we have pointed out, water pipes and water pipelines. Respondent cannot escape the impact of the authorities above cited by invoking section 2637 of the Kern County Ordinance Code. While the passage of the ordinance antedates the delivery of the deeds, it would seem clear that the ordinance is meant to refer only to franchises and similar rights granted by the county in property owned by the county and that constitutionally it could not be applied to real property interests which had never belonged to the county and which had been reserved specifically by those making a qualified dedication of a street or boulevard.

Respondent pleads that it has never maintained that appellants do not have an easement to have pipes in the roadway and that the county did not insist that the pipes be removed from the boulevard, but only informed appellants that the pipes would be injured by the heavy equipment if they were not moved. Respondent argues that as section No. 2637 was in force when the deeds were executed and recorded on April 30, 1951, appellants' dedication and reservation were necessarily made subject to the existing statute. (*Alpha Beta Food Markets, Inc.* v. *Retail Clerks Union,* 45 Cal.2d 764, 771 [291 P.2d 433].) But this argument fails to give due weight to the fact that the property right in the easement has at all times been held by plaintiffs and their predecessors in interest and that the police power does not give a county the power to take property without due process

of law. (*Hill* v. *City of Oxnard, supra,* 46 Cal.App. 624, 632-636.)

■ Article I, section 14, of our Constitution is directly applicable: "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner, . . ." The taking or damaging of an easement by a public body requires the payment of just compensation. (*County of Los Angeles* v. *Wright,* 107 Cal.App.2d 235, 241 [236 P.2d 892]; *People* v. *Buellton Development Co.,* 58 Cal.App.2d 178, 183 [136 P.2d 793]; *Bacich* v. *Board of Control,* 23 Cal.2d 343, 349, 350 [144 P.2d 818].) And plaintiffs are entitled to damages under a theory of inverse condemnation. (18 Cal.Jur.2d, Eminent Domain, § 374 et seq., p. 95 et seq.)

The judgment is reversed insofar as it relates to those portions of Wofford Boulevard described in the pleadings which are outside of the limits of tracts 1422 and 1605, and it is otherwise affirmed.

Brown (R. M.), J., and Stone, J., concurred.