No. 44,879

Donald P. Reinecker and Betty L. Reinecker, His Wife, *Appellants*, v. The Board of Trustees of the Fort Scott Community Junior College, District of the State of Kansas, *Appellee.*

(426 P. 2d 44)

Opinion filed April 8, 1967.

*Perry Owsley* and *Carl Pingry*, both of Pittsburg, argued the cause and were on the brief for the appellant.

*Douglas Hudson*, of Fort Scott, argued the cause, and *Douglas G. Hudson* and *Charles M. Warren*, both of Fort Scott, were with him on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: This is an action by the plaintiff landowners to enjoin the Board of Trustees of the Fort Scott Community Junior College from condemning a tract of land containing approximately 132 acres. The action was tried to the court which found in favor of the defendant and entered judgment accordingly. The plaintiffs have appealed from that judgment. Throughout this opinion, we

shall refer to the parties as plaintiffs on the one hand, and defendant, or board, on the other.

As found by the trial court the following facts appear: For many years the Fort Scott Junior College was operated by the Board of Education of the city of Fort Scott. The city school district was slightly larger in area than the city itself.

In 1965, the Kansas Legislature enacted House Bill No. 893, known as the "Community Junior College Act." This piece of legislation became Chapter 417, Laws of Kansas, 1965, and now appears as K. S. A. 72-6901 to 72-6927, inclusive. Pursuant to the Act's provisions, the Fort Scott Community Junior College was established. The community junior college district includes the entire area of Bourbon County. Neither the organization nor the present existence of the new community junior college is challenged in this lawsuit.

Some time after the Fort Scott Community Junior College was established, the defendant called a bond election, the proceeeds from the bonds to be used for securing a suitable site for the school and for the erection and equipment of buildings thereon. When the bond issue carried, the defendant initiated proceedings to condemn the 132 acre tract owned by the plaintiffs, and which adjoined the city of Fort Scott. The plaintiffs thereupon commenced the present action to enjoin those proceedings and were unsuccessful in the court below.

The condemnation proceedings are challenged on two grounds: (1) That the defendant board does not possess the power of eminent domain and (2) that the amount of land sought to be taken for school purposes is excessive. We shall consider these two points in order.

The plaintiffs' first contention is predicated on their interpretation of a portion of K. S. A. 72-6913. This statute bears the heading "Board of Trustees" and, in general, directs who shall comprise the membership of the board and how the members shall be selected.

Before attempting an analysis of that statute, we pause to point out that K. S. A. 72-6914, which is also a part of the Community Junior College Act, specifies, in subparagraph (a) that the board of trustees shall have custody of and be responsible for the property of the community junior college and shall be responsible for the management and control of the college. In subparagraph (b) of that statute it is further provided that for the effectuation of the purposes of the Act, the board is granted certain specified powers,

including the right to acquire property by condemnation (subparagraph [b] [9]) and to exercise the right of eminent domain (subparagraph [b] [11].)

Turning our attention to K. S. A. 72-6913, the statute directs, in subsection (a) thereof, that the governing body of a community junior college shall be a board of trustees composed of six elected members, except that in certain cases the first board of trustees shall not be elected. Subparagraph (b) then provides that where an existing junior college is established as a community junior college under the provisions of K. S. A. 72-6910 (d), and the governing body of the existing junior college is the governing body of a school district smaller in size than the community junior college district, then the governing body of the school district shall be the governing body of the community junior college district temporarily, and until the state superintendent shall provide for a special election.

We believe the design of this statute is plain. Stated as simply as we know how, when a community junior college succeeds an existing junior college, the board of the school district which has governed the old junior college, provided that school district is smaller than the community college district, is then to become the governing body of the new community junior college until a new board of trustees is elected. Until such time as the new board is chosen at the election called by the state superintendent, the old board *is* the community college board of trustees and as such, in our opinion, it is entrusted with all the powers and authority set forth in K. S. A. 72-6914, including the right of eminent domain. This must of necessity be so; otherwise an unacceptable hiatus would result and might long continue.

In the instant case, for example, the election of new trustees was not held until November 8, 1966. Of necessity, the care, control and management of the new community college must have vested in some governing authority if the school was to continue in operation during 1966. The legislature saw fit to vest that management in the school district board which had previously managed the existing junior college. This board then became, by operation of law, at least the *interim* community junior college board of trustees.

The legislative use of the word "temporarily" does not in our judgment refer to the powers of such interim board, but, rather, to its tenure. Until the existence of that board should be termi-

nated by the election of new trustees, the interim board would constitute, in our judgment, the sole governing board of the community junior college district and as such would possess and might exercise, in full measure, the authority granted in K. S. A. 72-6914.

We believe the plaintiffs, by inference at least, have recognized the true status of the defendant board by initiating this action against "The Board of Trustees," rather than against "The Temporary Board of Trustees." Disregarding, however, the plaintiffs' seeming inconsistency, we have no hesitancy in holding that the defendant possessed the power of eminent domain at the time it instituted condemnation proceedings.

If analogy were needed to support this position—which we believe is not the case—it would, in our judgment, be found in the status occupied by a *de facto* officer, whose acts are binding on the people he serves and whose authority to act may be questioned only by the state. (*Patrick v. Haskell County,* 108 Kan. 141, 193 Pac. 1061.) Indeed, we deem the position of this defendant much stronger than that of a *de facto* officer, for the board has explicit legislative recognition.

The second issue raised on appeal concerns the extent or amount of land which the defendant sought to appropriate, it being contended by the plaintiffs that the area involved is in excess of that required for school purposes, and that the condemnation proceedings are therefore illegal.

At the outset, we may state the rule generally to be that in the absence of a statute limiting the amount of land which may be taken for public purposes, a grantee of the power of eminent domain is vested with a reasonable discretion in determining the extent of land required for a specific purpose, and its discretion is not to be disturbed on judicial review in the absence of fraud, bad faith or abuse of discretion. (26 Am. Jur. 2d, Eminent Domain, § 114, p. 772; 29A C. J. S. Eminent Domain, § 92, pp. 381-383.)

In *Soden v. State Highway Commission,* 192 Kan. 241, 387 P. 2d 182, this court considered the limits of judicial power in reviewing the exercise of the right of eminent domain and we there held:

"Once the legislature has delegated to a public authority the power to determine the necessity of exercising the power of eminent domain, the decision of the grantee as to the necessity can only be reviewed by the courts for the purpose of considering public use, fraud, bad faith, or abuse of discretion." (Syl. 2.)

Inasmuch as the plaintiffs do not claim fraud on the part of the

board, the question before us boils down to this: Can it be said from the evidence found in the record, when considered within the framework of the foregoing rule, that the defendant was guilty of bad faith or abuse of discretion in condemning the entire 132-acre tract for school purposes? For reasons hereafter set forth, we believe a negative answer must be supplied.

It is obvious, from reading the record, that members of the board gave serious study to the amount of land they belived it advisable to obtain. Public meetings were held, sources of information were probed and many points of view were invited and discussed. It is probable, also, that some suggestions were offered by outsiders, and may even have been tentatively pondered by some board members, which were not of legitimate concern in determining the area needed for school purposes.

However, numerous matters were considered and taken into account by the board which we view as having been both logical and justifiable. We believe it is apparent that in the final analysis, and when the chips were down, the board was guided solely by what its members felt was required to develop and to operate a first-class junior college facility.

In deciding what amount of land would be required, the board properly gave attention to factors affecting future growth, for the rule is well settled that in determining what property is needed for public use, not only present demands, but those which may fairly be anticipated in the future, may be considered. (26 Am. Jur. 2d, Eminent Domain, § 116, p. 775.) This court has expressly recognized that principle in *Soden v. State Highway Commission,* supra, where we said:

"The statutes place no restrictions on the appellee as to the acquisition of land for anticipated future use. The matter is therefore left to its sound discretion.

"It may be stated as a general proposition of law that the appellee could not speculate in land values by acquiring land through condemnation when there was no reasonable anticipation that the land would ever be used for highway purposes. However, the construction and maintenance of a state highway system requires planning and programming well into the future. The responsibility is placed on the State Highway Commission to determine what land will be necessary for carrying forward the highway program." (p. 244.)

Turning again to the record, we find that seven meetings were held by the board over a period beginning June 21, 1965, and ending on December 20, 1965, at which time the condemnation resolution

was adopted. At each board meeting, plans were presented and studied for supplying the requirements of the new junior college. The plans included the acquisition of a new location, the erection of new buildings and facilities, and matters allied thereto. It is clear that prolonged consideration was given both to immediate needs and to future requirements. The final decisions taken were not made in haste or without due reflection.

Without attempting to recapitulate the evidence in its entirety, it can be said to show that the president of the college, Mr. R. E. Hicks, recommended the acquisition of more than 80 acres; that an Evaluation Guide prepared by the Kansas State Department of Public Instruction recommends that a junior college campus should contain a minimum of 80 acres; and that other junior colleges within the state are providing areas to meet future needs, one even anticipating an expansion of its site to from 120 to 160 acres.

In addition, the record shows that the Fort Scott Junior College has experienced a steady growth in enrollment from 180 in 1955 to 405 in 1965, and that the Fort Scott Community Junior College anticipates an attendance for 1966 of 600 students. What prophet would be so brash as to prophesy a limit to its enrollment beyond which this college might not expand? The academic fame of Kansas schools, including junior colleges, extends into far reaches, their scholastic excellence luring even the tallest and brawniest young men from such unlikely places as Allegheny coal fields and southern citrus groves. Despite a loss of population in Bourbon County, this junior college has prospered over the years, and continuing growth and development may logically be expected.

Members of the board make it plain throughout their testimony that their individual decisions were based on anticipated future needs. Among the uses for which it was envisioned this school land would be needed, and for which it might be employed, were classroom buildings, athletic fields, tennis courts, a stadium, an auditorium, a vocational building, parking areas and housing or dormitory facilities. Along with those uses, we might add that roadways, sidewalks and normal landscaping might be expected to consume an appreciable part of the school area.

The plaintiffs complain that in discussing the area to be acquired the board canvassed the possibility of utilizing it, in part, for vocational buildings or dormitory sites. These purposes, the plaintiffs assert, find no authority in law. While we shall not speculate on what might be included in a junior college curriculum, nor attempt

to delineate every power which the board might exercise to further the objectives of the Act, we call attention to certain statutes which the board may well have had in mind.

K. S. A. 72-115 directs the state superintendent, subject to approval by the state board, to prescribe courses of study in certain subjects, including vocational subjects. Under the provisions of K. S. A. 72-4321 and 72-4322, any board which is the governing body of a school district operating a high school or junior college or institution of higher learning, or any group of such boards, may present a plan to the state board for vocational education to establish and operate an area vocational-technical school which plan "may include cooperative arrangements which include junior colleges" and other institutions. Another statute in this field, K. S. A. 72-4336, provides that any part of the state plan provided for in the Community Junior College Act may be adopted by reference as part of the state technical plan.

We cite these statutes, not with the idea of construing them, but simply to suggest that in view of their provisions, members of the board may hardly be charged with bad faith or gross abuse of discretion when they considered the possibility of erecting a building where vocational subjects could be taught.

Although we are directed to no statute presently authorizing the board to erect dormitories, we are cognizant of the modern trend, as indeed the board must have been, toward the construction, by school agencies, of student housing financed by revenue bonds. The growth of this trend is illustrated by the changes which have occurred in the definitions of K. S. A. 76-6a13 since the time that statute was first enacted in 1947. We would not deem it wholly unrealistic for the board to anticipate that, within the reasonable future, legislation might be enacted broadening the scope of Ch. 435, Laws of Kansas 1947, as amended (now K. S. A. 76-6a12 *et seq.*), to include within its purview a community junior college such as Fort Scott's.

On the entire record we believe that neither bad faith nor gross abuse of discretion may be imputed to the members of the defendant board. In so deciding, we do not infer that a public body, clothed with the power of eminent domain, is not limited by the bounds of good faith in exercising its authority. Neither do we mean to say that a school district's appetite for land may exceed its digestive

potential. We hold, only, that the saturation point is not clearly shown to have been exceeded under the facts of this case.

The defendant has included a point of evidence in its brief, contending that the trial court erred in admitting certain testimony. Since no cross appeal has been taken by the defendant, the point is not properly before us, and will not be discussed. (*James v. City of Pittsburg*, 195 Kan. 462, 407 P. 2d 503.)

No error appearing, the judgment of the court below is affirmed.